**FEDERAL TRADE COMMISSION, Plaintiff,**

v.

**AMREP CORPORATION, Defendant.**

**No. 87 Civ. 4425 (PNL).**

United States District Court, S.D. New York.

Sept. 29, 1988.

Richard C. Donohue, Mary M. Carr, David M. Fitzgerald, Washington, D.C., for plaintiff.

I. Michael Bayda, Jacobs, Persinger & Parker, New York City, for defendant.

## MEMORANDUM AND ORDER

LEVAL, District Judge.

The Federal Trade Commission ("Commission") brings this action against AMREP Corporation on behalf of allegedly defrauded purchasers of land, under Section 19(a)(2) of the Federal Trade Commission Act. 15 U.S.C. § 57b(a)(2). The complaint seeks redress for those purchasers. Both sides move for partial summary judgment contending that certain claims or issues have been bindingly adjudicated by prior litigation. Defendant AMREP asks that the complaint be dismissed to the extent that it seeks relief for purchasers who settled prior litigation and released AMREP on the same facts. Plaintiff moves for partial summary judgment contending that certain facts, including defendant's liability, were conclusively established against defendant in a prior proceeding brought by the Commission.

## BACKGROUND

This action stems from a land fraud scheme engineered by AMREP and its subsidiaries in the period from the mid–1960s to the mid–1970s. That scheme led to the conviction of AMREP and certain of its officers on charges of mail fraud and inter-

state land sales fraud. *United States v. AMREP Corp.*, 560 F.2d 539 (2d Cir.1977), cert. denied, 434 U.S. 1015, 98 S.Ct. 731, 54 L.Ed.2d 759 (1978). It also gave rise to at least five civil class action suits on behalf of purchasers of lots at Rio Rancho Estates. *Bryan and Husted v. AMREP Corp.*, No. 75 Civ. 5911 (MEL); *Ross v. AMREP Corp.*, 82 F.R.D. 130 (S.D.N.Y. 1979); *Jenne v. AMREP Corp.*, No. 77 Civ. 0487 (D.N.J); *Cooper v. AMREP Corp.*, No. 78 Civ. 116 (D.N.J.). Finally, it led to a Commission proceeding under Section 5 of the Federal Trade Commission Act, 15 U.S. C. § 45(b), in which the Commission found that the defendant engaged in deceptive acts and practices and issued a cease and desist order which was affirmed on appeal by the United States Court of Appeals. *AMREP Corp. v. FTC*, 768 F.2d 1171 (10th Cir.1985), cert. denied, 475 U.S. 1034, 106 S.Ct. 1167, 89 L.Ed.2d 352 (1986).

AMREP is an Oklahoma corporation whose principal business is the subdivision of undeveloped land and the sale of homesite lots. It owns and sells lots at three subdivisions: Rio Rancho Estates near Albuquerque, New Mexico, Silver Springs Shores near Ocala, Florida, and Eldorado at Santa Fe, New Mexico.[1] Rio Rancho Estates, the subdivision at issue in these cross-motions for summary judgment, is made up of two vast tracts of arid rangeland northwest of Albuquerque, New Mexico. In 1972, the Commission instituted an investigation of the marketing techniques used by AMREP at these subdivisions. On March 11, 1975, it charged the defendant under Section 5 with unfair and deceptive

practices in the sale of land during the period 1961 to the institution of the charge.[2] On July 18, 1979, an Administrative Law Judge issued an Initial Decision holding that in the period from 1961 to March 1975 AMREP had engaged in unfair and deceptive acts and practices in the sale of land at its subdivisions. With some changes, the Commission made those findings final and ordered AMREP to cease and desist from making further false representations.

The Commission found that AMREP marketed lots through company-sponsored dinner parties held far away from the particular subdivision being marketed, at which prospective buyers were plied with liquor and pressured into signing land purchase agreements. At these selling parties, AMREP represented that Rio Rancho Estates was directly in the path of Albuquerque's suburban development and that geographical and legal constraints on the other three sides of Albuquerque would insure that the explosive growth of the city would move in the direction of AMREP's subdivision; AMREP falsely represented that land at Rio Rancho had been rapidly increasing in market value, that the sales prices for property at Rio Rancho Estates was below market value, that land investment in the subdivision involved little or no risk, and that there was an active market for Rio Rancho property. The findings and order were affirmed on July 25, 1985. *AMREP Corp. v. FTC*, 768 F.2d 1171 (10th Cir.1985), cert. denied, 475 U.S. 1034, 106 S.Ct. 1167, 89 L.Ed.2d 352 (1986).[3]

---

1. A fourth subdivision, Oakmont Shores in Missouri, was the subject of the FTC investigation and cease and desist order, but is no longer owned by Amrep and is not a subject of this litigation.

2. The complaint contained a Notice Order, informing Amrep that if the Commission found that it had engaged in unfair or deceptive business practices, the Commission might bring an action for "restitution and refunds for past, present and future consumers or such other types of relief as are set forth in Section 19(b) of the Federal Trade Commission Act, as amended."

3. During the pendency of the Commission investigation, Amrep and certain of its officers were

also being prosecuted by the United States Attorney for the Southern District of New York for mail fraud and interstate land sales fraud. An indictment charging Amrep and such individuals with a conspiracy to defraud purchasers of undeveloped lots in Rio Rancho Estates was filed on October 28, 1975. Amrep along with four of the individual defendants was convicted of twenty counts of mail fraud and five counts of interstate lands sales fraud in January 1977 after a ten week jury trial. *See United States v. AMREP Corp.*, 560 F.2d 539 (2d Cir.1977), cert. denied, 434 U.S. 1015, 98 S.Ct. 731, 54 L.Ed.2d 759 (1978). The evidence presented at trial demonstrated that the defendants had used fraudulent techniques to sell lots at Rio Rancho Estates from 1964 on.

While the Commission's Section 5 proceeding was pending, class actions were brought in this court against AMREP by and on behalf of purchasers of lots at Rio Rancho Estates between January 1, 1972 and May 2, 1977. The complaints pleaded causes of action under the Interstate Land Sales Full Disclosure Act, 15 U.S.C. § 1701 *et seq.*, the Securities Act of 1933, 15 U.S.C. § 77a *et seq.*, the Securities Exchange Act of 1934, 15 U.S.C. § 78a *et seq.*, the Sherman Anti–Trust Act, 15 U.S.C. § 1, and various state laws. *See Bryan and Husted v. AMREP Corp.*, No. 75 Civ. 5911 (MEL); *Ross v. AMREP Corp.*, 82 F.R.D. 130.[4] After extensive litigation and negotiations lasting four years, proposed settlements of the class actions were approved by the defendant and the class representatives. The Commission, which was not a party, wrote to the court opposing approval of the settlements contending that the settlements involved inadequate compensation for class members. A very small percentage (approximately 350 out of nearly 11,000) class members opted out of the settling class, preserving their causes of action. In spite of the Commission's opposition, the settlements were approved by the district court on April 5, 1979. *Heit v. AMREP Corp.*, 82 F.R.D. 130 (S.D.N.Y. 1979).

The stipulations of settlement contained a provision barring class members who did not opt out from any further recovery against AMREP or any of its affiliates arising out of any of the matters or transactions alleged in the complaint.[5] Pursuant to the stipulations, each class member was sent a check containing a release of all claims stated in the stipulation. Davis Aff. ¶ 3.

Civil actions were also commenced in the District of New Jersey in 1977 and 1978 by purchasers of lots at Rio Rancho Estates, charging AMREP with violations of the Securities Act of 1933, the Securities Exchange Act of 1934, the Interstate Land Sales Full Disclosure Act, the Federal Trade Commission Act, and state law. *Jenne v. AMREP Corp.*, No. 77 Civ. 0487 (D.N.J.); *Cooper v. AMREP Corp.*, No. 78 Civ. 116 (D.N.J.). The plaintiffs included persons who opted out of the class action suits in the Southern District of New York. Those actions were settled and discontinued in 1980. Pursuant to the Settlement Agreements, each plaintiff signed individual releases for any and all claims that plaintiffs might have had against AMREP.[6]

In June 1987, the Commission initiated this action for consumer redress in favor of

---

**4.** The *Ross* class members purchased their land between January 1, 1972 and November 20, 1972; the *Bryan and Husted* members purchased between November 21, 1972 and May 2, 1977.

**5.** The full release in the *Bryan and Husted* action, which was identical to that in the *Ross* action, provided that if the settlement was approved, the court would enter judgment:

(c) Permanently barring and enjoining the institution or prosecution by any class member who has not been validly excluded from the class of any other action asserting claims against any defendants herein, any affiliated company of AMREP or any past or present officer, director or agent of AMREP, Rio Rancho or any affiliated company, which are or could have been asserted in connection with or which arise out of any of the matters or transactions alleged in the Amended Complaint, including, without limitation, claims for rescission, restitution, compensatory damages, exemplary damages, penalties or other legal or equitable relief, under the Interstate Land Sales Full Disclosure Act, the Securities

Act of 1933, the Securities Exchange Act of 1934, the Sherman Act, state securities laws, state consumer protection statutes, state laws governing the sale of subdivided land, the common law and any other federal, state or local law, rule or regulation, whether or not any of said claims have heretofore been asserted in any other action or proceeding by or on behalf of any member of the class.

Bayda Aff., Ex. 1 at 13–14.

**6.** The Agreement of Compromise and Settlement in the *Jenne–Cooper* actions provides:

Each undersigned plaintiff hereby releases each defendant named in any of the pleadings in the *Jenne–Cooper* actions and each subsidiary corporation of each corporate defendant and the respective officers, directors and stockholders of each corporate defendant and each subsidiary thereof, from any and all claims each undersigned plaintiff has or may have against any of them, including but not limited to the claims asserted or which might have been asserted in any of the pleadings in the *Jenne–Cooper* actions.

Bayda Aff., Ex. 23.

all persons who purchased property at Rio Rancho Estates and Silver Springs Shores during the period March 11, 1972 to the end of 1977.[7] The motions now at issue seeking partial summary judgment involve applications of the principles of *res judicata* and release.

## DISCUSSION

### Defendant's Motion for Summary Judgment

■ AMREP's motion is based on the settlements of the various purchasers' actions. It contends that purchasers who accepted those settlements thereby terminated their rights and released AMREP from liability based on those claims. It contends that by bringing this action on behalf of those claimants who previously settled, the Commission is asserting claims which have been finally adjudicated, foreclosed and released. This argument is entirely convincing. The Commission makes no substantial arguments to the contrary.

The claims advanced by the Commission are essentially the same claims as formed the basis of the purchasers' actions against AMREP. The theory of all these actions is that AMREP sold land to the purchasers by means of fraud and deceitful manipulation. It is undisputed that the purchasers who settled the earlier actions are themselves barred by the doctrine of *res judicata* from bringing a new action based on the same facts and theory.[8] Nor could a new action be brought for their benefit by a parent, guardian or class representative. *See Sea–Land Services, Inc. v. Gaudet,* 414 U.S. 573, 593–94, 94 S.Ct. 806, 819, 39 L.Ed.2d 9 (1974); *Berry Petroleum Co. v. Adams & Peck,* 518 F.2d 402, 411–12 (2d Cir.1975); *see generally* Restatement (Second) of Judgments § 41 (1982).

The same result obtains when the Commission, acting in a representative capacity on behalf of the purchaser, brings an action seeking compensation for one who has previously settled a lawsuit and released the defendant based on the same claim. In analogous circumstances, courts have barred the EEOC from maintaining a claim for the benefit of an employee who has previously settled his claim with the employer. *See EEOC v. Goodyear Aerospace Corp.,* 813 F.2d 1539, 1543 (9th Cir.1987).[9]

---

7. The time periods covered by this action are dictated by the statute of limitations for actions under Section 19. The applicable statute of limitations provides that "no action may be brought by the Commission ... more than three years after ... the unfair or deceptive act or practice to which an action ... relates; except that if a cease and desist order with respect to any person's, partnership's, or corporation's ... unfair or deceptive act or practice has become final and such order was issued in a proceeding under section 45(b) of this title which was commenced not later than 3 years after the ... act or practice occurred, a civil action may be commenced under this section against such person, partnership, or corporation at any time before the expiration of one year after such order becomes final." 15 U.S.C. § 57b(d). The administrative complaint in this action was filed on March 11, 1975 and thus the action covers acts or practices from March 11, 1972 on.

8. The Commission argues that the class members' claims are not barred because *res judicata* does not bar a claim which has not matured at the time of the determination of the prior matter. *See Whitfield v. Knoxville,* 756 F.2d 455 (6th Cir.1985). It contends that since a Section 19 action can only be commenced after the final conclusion of a Section 5 proceeding (and the Section 5 proceeding was not finally concluded at the time of the class action settlements), class action settlements have no *res judicata* effect on the action currently before the court. The fact that a Section 19 action was not yet ripe at the time of the class action settlements is not germane. First, the class members could not have asserted a right to sue under Section 19 in any event, because there is no private right of action under that Section. Furthermore, the doctrine of *res judicata* bars consideration of all *claims* that were or reasonably could have been litigated by the class members in the prior proceeding. This action and the class action suits were predicated on the same claims. Thus, the Commission's argument has no merit.

9. The Commission seeks to distinguish this case on the grounds that the dismissal was for "mootness." This is no distinction. The dispute was considered moot only because its earlier settlement in the individual action required invocation of *res judicata* against the EEOC suing for the individual's benefit. *See Truvillion v. King's Daughters Hospital,* 614 F.2d 520, 525 (5th Cir.1980); *EEOC v. McLean Trucking Co.,* 525 F.2d 1007, 1011 (6th Cir.1975); *EEOC v. Huttig Sash & Door Co.,* 511 F.2d 453 (5th Cir. 1975); *cf. In re Baldwin–United Corp.,* 770 F.2d 328, 336 (2d Cir.1985) (settlement of federal actions bars states from bringing derivative actions in favor of settling parties).

The Commission argues that the language of Section 19 expressly precludes application of *res judicata*. The statute reads, "Remedies provided in this section are in addition to, and not in lieu of, any other remedy or right of action provided by State of Federal Law." 15 U.S.C. § 57b(e). This is a common statutory formulation. It does not mean what the Commission contends. It is designed to negate a possible inference that the new enactment was intended to repeal or preempt previously existing causes of action. *See* 1A N. Singer, Statutes and Statutory Construction (Sands 4th ed. 1985) ¶ 20.22 p. 108. It has been interpreted to allow the Commission to pursue remedies *in a Section 5 action,* notwithstanding the remedies available under Section 19. *See Warner Lambert Co. v. FTC,* 562 F.2d 749, 757–58 (D.C.Cir.1977), *cert. denied,* 435 U.S. 950, 98 S.Ct. 1575, 55 L.Ed.2d 800 (1978). Thus, common law fraud remedies and Section 5 remedies continue to exist unaffected by the enactment of Section 19. *See* Joint Conf.Rep. No. 93–1408, 93d Cong., 2d Sess., *reprinted in* 1974 U.S.Code Cong. & Admin.News 7773. It is wholly unreasonable to read this language as permitting reinstitution by the Commission of consumers' claims fully litigated to conclusion in private actions. There is no authority in support of this outlandish position.

Next, the Commission argues that private litigants cannot foreclose the Government's right to bring an independent action to vindicate the public interest. That is true. *See* Wright, Miller & Cooper, *Federal Practice & Procedure* § 4458 at 520 (1981); Restatement (Second) of Judgments § 41 comment d (Reporter's Note). But it is not pertinent to AMREP's motion. The motion does not seek to preclude the Commission from bringing suit for vindication of a public interest. Only to the extent that the Commission's suit seeks redress of the private claims of purchasers who have previously settled their claims is it barred. Many potential remedies in the public inter-

est remain available to the Commission, unaffected by the prior private litigation, including remedies in favor of purchasers who did not settle their claims. But those claims which seek compensation (or other redress) in favor of individuals who have previously settled with AMREP are barred by *res judicata*. Thus, in employment discrimination cases, courts have distinguished between the power of the EEOC to eliminate discriminatory practices by injunctive relief irrespective of prior private litigation and its power to recover "private benefits" in favor of individuals who have previously settled. *EEOC v. McLean Trucking Co.,* 525 F.2d 1007, 1011 (6th Cir.1975).

■ The principal thrust of the Commission's remaining arguments is to the effect that the defendant has profited from an outrageous fraud which was settled too cheaply in the private lawsuits. That may be true but it has no bearing on the question of *res judicata*. The preclusive effect of a prior settlement or adjudication may be avoided on a showing it was procured by fraud or duress. *See Korn v. Franchard Corp.,* 388 F.Supp. 1326, 1333 (S.D.N.Y. 1975). The Commission makes no such contention here. The mere fact that a Government agency, or even the court, believes in retrospect that a claim was compromised too cheaply does not deprive the judgment based on that settlement of its finality.

Upon the proposed settlements of the class actions, there were two avenues available to the Commission to avoid preclusion of the rights of class members by inadequate settlements. First, under Fed.R.Civ. P. 23(e) the Commission could have persuaded the court that settlement did not adequately protect the members of the class and therefore should not be approved. Failing that, the Commission could have advised class members to opt out of the settlement and preserve their claims for the Commission's Section 19 action.[10] The

---

**10.** The Commission argues that the statute of limitations is more favorable to some of the purchasers' claims when advanced on their behalf by the Commission under Section 19 than

when advanced directly in the class actions. That might have been a good reason for purchasers to withdraw from the class, preferring to be represented by the Commission than by

Commission sought unsuccessfully to convince the trial court to reject the settlement. The court found the settlement reasonable given various risks of the litigation. *Heit v. AMREP Corp.*, 82 F.R.D. 130 (S.D.N.Y.1979). The fact that the Commission disagrees does not deprive the judgment of its finality or its preclusive effect on the relitigation of the same claims.

The releases executed in the class actions and the *Jenne–Cooper* actions provide a further basis for granting defendant's motion for summary judgment. The releases in the class actions released defendants from "any claim ... which arises out of any of the matters or transactions alleged in the Amended Complaint ... whether or not any of said claims have heretofore been asserted ... on behalf of any member of the class." Bayda Aff., Ex. 1, Ex. 2. The *Jenne–Cooper* plaintiff released defendant from "any and all claims each undersigned plaintiff has or may have against any of them." Bayda Aff., Ex. 23. These releases were freely given after extensive litigation and negotiations and after class members were informed that they might be waiving rights of recovery under Section 19. *See* Bayda Aff., Ex. 8, Ex. 9.

While the Commission correctly states that private parties cannot release public rights, private parties can release the right to have an action brought on their behalf by a representative. *See, e.g., Korn v. Franchard Corp.*, 388 F.Supp. 1326 (S.D.N.Y.1975) (where releases are knowingly and voluntarily executed, the courts will not interfere with a party's decision to bargain away his rights out of concern that a federal statute might thus be underenforced); *see Mittendorf v. J.R. Williston & Beane, Inc.*, 372 F.Supp. 821, 835 (S.D.N.Y. 1974) (part of the benefit of the bargain here was the plaintiffs' agreement to release possible recovery under Section 19). As there is no evidence of fraud, coercion, or duress in the procurement of releases, *see Korn v. Franchard Corp.*, 388 F.Supp. at 1333, the purchasers' bargain to release

their claims should be enforced and the Commission precluded from bringing an action to the extent that it seeks relief on behalf of persons who have executed releases. *See TBK Partners, Ltd. v. Western Union Corp.*, 675 F.2d 456, 460 (2d Cir.1982) ("in order to prevent relitigation of settled questions at the core of a class action, a court may permit the release of a claim based on the identical factual predicate as that underlying the claims in the settled class action even though the claim was not presented and might not have been presentable in the class action").

### *Plaintiff's Motion for Summary Judgment*

The Commission moves for partial summary judgment based on the Section 5 proceeding. It alleges that a number of facts and issues, including the liability of AMREP to the purchasers, were conclusively adjudicated in the Section 5 proceeding and must therefore be deemed established in this case.

The theory of the Commission's argument is supported by the statute. Prior to the enactment of Section 19 in 1975, the Commission had the power under Section 5 to order cessation of commercial practices that have the capacity to deceive, but lacked power to institute actions seeking remedies in favor of the defrauded victims. *See Heater v. FTC*, 503 F.2d 321 (9th Cir. 1974); *FTC v. International Diamond Corp.*, 1983–2 Trade Cas. (CCH) ¶ 65,725 (N.D.Cal.1983) (mag. opinion) [1983 WL 1911]. Section 19 was designed to fill this gap. It authorizes the Commission to sue on behalf of defrauded consumers, but only *following* the issuance of a final cease and desist order under Section 5.

The statute, however, undertook to relieve the Commission of the onerous obligation to relitigate in the Section 19 suit all the facts it had established in the earlier proceeding. It provides that, in the Section 19 action, "the findings of the Commission as to the material facts in the proceeding

the plaintiff-class representatives. It is not a reason to deny the finality of the settlements they accepted.

under section [5] with respect to such ... corporation's ... act or practice, shall be conclusive." 15 U.S.C. § 57b. The statutory design of the Section 19 action on behalf of the consumer thus expressly contemplates the type of motion which the Commission makes here. Material facts established in obtaining a cease and desist order under Section 5 are "conclusive" in the subsequent action under Section 19.

■ The theory of the Commission's motion is thus basically sound. There is no merit to AMREP's argument that grant of such a motion would deprive it of due process and the right to jury trial. Nothing in the Constitution limits the power of Congress to create a right of action in which facts would be adjudicated by an administrative agency, without a jury. The Supreme Court has specifically approved the giving of preclusive effect in court proceedings to administrative fact-finding. *See University of Tennessee v. Elliott*, 478 U.S. 788, 106 S.Ct. 3220, 92 L.Ed.2d 635 (1986); *United States v. Utah Construction & Mining Co.*, 384 U.S. 394, 86 S.Ct. 1545, 16 L.Ed.2d 642 (1966) (superseded by statute); *accord Union Manufacturing Co. v. Han Baek Trading Co.*, 763 F.2d 42, 44–45 (2d Cir.1985). This practice is particularly immune from due process challenge where it is authorized by statute, *cf. Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979), and where the original agency determination is subject to full review by an Article III court. *See Thomas v. Union Carbide Agricultural Products Co.*, 473 U.S. 568, 105 S.Ct. 3325, 87 L.Ed.2d 409 (1985).[11]

■ The right to jury trial, as preserved by the Seventh Amendment, has been held to apply to such actions as existed at the common law. *See Curtis v. Loether*, 415 U.S. 189, 193, 94 S.Ct. 1005, 1008, 39 L.Ed. 2d 260 (1974); *SEC v. Commonwealth Chemical Securities, Inc.*, 574 F.2d 90 (2d Cir.1978). It does not prevent Congress from creating new causes of action and

other proceedings without a jury. *See Parklane Hosiery Co. v. Shore*, 439 U.S. at 334–35, 99 S.Ct. at 653–54; *Atlas Roofing Co. v. Occupational Safety & Health Review Commission*, 430 U.S. 442, 455, 97 S.Ct. 1261, 1269, 51 L.Ed.2d 464 (1977).

Although the action under Section 19 bears similarity to an action for misrepresentation at common law, it is also different in many respects. First, it may be brought only by an agency of the United States Government and not by the individual victim of the fraud. Its definition of the elements of the cause of action also differs from common law fraud. I conclude that the cause of action created by Section 19 does not fall within the right to jury trial guaranteed by the Seventh Amendment.

Nor is due process violated by the fact that the findings made in the Section 5 proceeding are made by the commissioners of the agency that employs the prosecutors of the action. It is well settled that the combination of prosecutorial and adjudicative functions within an administrative agency does not raise due process concerns. This common practice in modern administrative agencies is prescribed by the Administrative Procedure Act, 5 U.S.C. § 551 *et seq*. Section 554 of that Act, in prohibiting an agency's prosecutorial employees from participating in adjudicative functions, specifically exempts from this proscription other employees of the same agency. Those agency employees engaged in adjudication are presumed to be impartial. In order to overcome this presumption, a defendant must make a convincing showing of partiality or bias in the decision maker. *See Withrow v. Larkin*, 421 U.S. 35, 95 S.Ct. 1456, 43 L.Ed.2d 712 (1975); *United States v. Grinnell Corp.*, 384 U.S. 563, 583, 86 S.Ct. 1698, 1710, 16 L.Ed.2d 778 (1966). AMREP has not met this burden.

I conclude that the material findings of the Section 5 proceeding may lawfully pre-

---

**11.** In this case Amrep also had the benefit of notice at the time of the initiation of the Section 5 proceeding that if a violation were found, the Commission might proceed to seek redress in a subsequent Section 19 action "on the basis of the adjudicative proceedings in [the Section 5] matter." (Exhibit 1 to the Commission's Notice of Motion for Partial Summary Judgment.)

clude relitigation of those issues in a subsequent action under Section 19.

The question then arises what factual determinations should be deemed established. The Commission has not shown that the findings from the Section 5 action entitle it to summary judgment of *liability* in this action. Under Rule 56(c), Fed.R. Civ.P., summary judgment is appropriate only when "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." In considering such a motion, "a court must resolve all ambiguities and draw all reasonable inferences against the moving party." *Donahue v. Windsor Locks Board of Fire Commissioners*, 834 F.2d 54, 57 (2d Cir.1987). I find that the Commission's determinations in the administrative proceeding do not remove all genuine issues of fact as to AMREP's liability under Section 19.

First, the standards of the two actions are not identical. To establish liability under Section 19, the Commission must prove that "the act or practice to which the cease and desist order relates [was] one which a reasonable man would have known under the circumstances was dishonest or fraudulent." 15 U.S.C. § 57b(a)(2). The courts have held that this standard requires a degree of scienter that would establish liability under the mail fraud statute. *See FTC v. Glenn W. Turner*, 1983–1 Trade Cas. (CCH) ¶ 65,244 (M.D.Fla.1982) [1982 WL 1947]; *FTC v. MacMillan, Inc.*, 1983–2 Trade Cas. (CCH) ¶ 65,553 (N.D.Ill.1983) [1983 WL 1858]. The defendant must have had the specific intent to defraud, or at least engaged in conduct "reasonably calculated to deceive persons of ordinary prudence and comprehension." *FTC v. MacMillan, Inc.* at ¶ 68,757.

The prior Section 5 proceeding does not require proof of such facts with respect to the defendant's state of mind. *See American Airlines, Inc. v. North American Airlines, Inc.*, 351 U.S. 79, 86, 76 S.Ct. 600, 605, 100 L.Ed. 953 (1956); *FTC v. Algoma Lumber Co.*, 291 U.S. 67, 81, 54 S.Ct. 315, 321, 78 L.Ed. 655 (1934) (Cardozo, J.). It requires proof only that the act or practice

had the tendency or capacity to mislead. *AMREP Corp. v. FTC*, 768 F.2d 1171, 1177–78 (10th Cir.1985), *cert. denied*, 475 U.S. 1034, 106 S.Ct. 1167, 89 L.Ed.2d 352 (1986); *Ford Motor Co. v. FTC*, 120 F.2d 175, 181 (6th Cir.1941).

Thus, in order to satisfy the elements of Section 19, the Commission must prove facts pertinent to the defendant's state of mind that were not essential to a determination of the defendant's liability to a cease and desist order in the earlier proceeding. Indeed, because the Administrative Law Judge recognized that AMREP's state of mind was not material, he excluded AMREP's proffers of evidence of its good faith.

The Commission argues that despite the differing standards, summary judgment is nevertheless warranted for two reasons: (1) the evidence of fraud and deception is so compelling that reasonable minds cannot differ on the issue of liability; and (2) this is an equity action; so whether the facts establish liability is for the court to decide on the basis of the papers submitted on this motion. These arguments are without merit.

On the facts currently before the court, reasonable minds can reach differing conclusions on the issue of AMREP's state of mind during the redress period, both with respect to specific years and with respect to specific purchasers. And motions for summary judgment do not provide a vehicle by which a plaintiff may try its case on submission. This court " 'cannot try issues of fact; it can only determine whether there are issues to be tried.' " *Patrick v. LeFevre*, 745 F.2d 153, 158 (2d Cir.1984) (citations omitted). Thus, the differing standards of liability under Section 5 and Section 19 prevent a finding of liability against AMREP based on the Section 5 proceeding.

Second, to the extent this action seeks damages (or other suitable remedy) as redress for the defrauding of specific customers of AMREP, it calls for the adjudication of issues not raised in the Section 5 proceeding. Because the Section 5 proceeding involved no remedy in favor of any pur-

chaser but only a determination that AM-REP's sales practices had a capacity to deceive, that action did not establish that particular purchasers were victimized by fraudulent representations. In a Section 19 action, however, the court may grant relief only as to those individuals who sustained injury as a result of the defendant's deceptive acts and practices.

The problem in this case is more acute than in a case where liability is premised on the utilization of a false newspaper ad or prospectus. In such a case, each and every purchaser who responded to the ad or the prospectus would have been a recipient of the same false representation. Here, the false representations were contained in a variety of written and filmed sales materials, as well as in oral presentations at dinner parties that varied from instance to instance. Whether the representations made at the dinner parties were according to a rigid script or whether they varied in any significant degree was not established in the Section 5 action. As to any particular purchaser on whose behalf the Section 19 action is brought, the findings of the earlier proceeding do not show that he or she was the recipient of false representations.

A further problem in transplanting findings from the Section 5 proceeding into this one comes from the fact that the two actions deal with a different time frame. In the earlier proceeding AMREP was charged with fraudulent practices between 1961 and 1975. This complaint deals only with purchases between January 1, 1972 and May 2, 1977.

Much of the evidence of fraud in the earlier action related to purchases in the 1960s. The Commission's findings make no reference to AMREP's practices subsequent to 1974, make very few references to 1973 and 1974, and, in fact, note a change of sales practices on AMREP's part beginning in 1972. There are, therefore, genuine issues of fact with respect to AMREP's practices during the redress period.

The Commission's briefing is not sufficiently precise and detailed to permit rulings on which particular facts *were* established as material findings in the Section 5 proceeding and should be deemed as conclusive for this trial. I therefore withhold judgment on those issues.

### CONCLUSION

The motion of defendant AMREP for partial summary judgment dismissing the action insofar as it is brought to recover redress for purchasers who have settled their claims with AMREP is granted.

The motion of plaintiff for partial summary judgment, to the extent it seeks judgment on the question of AMREP's *liability*, is denied. Whatever specific facts have been determined in a manner that controls the action under Section 19 have not been sufficiently demonstrated in the Commission's briefing. That issue may be addressed again at or prior to trial.

SO ORDERED.