**FEDERAL TRADE COMMISSION,**
Plaintiff,

v.

**COMMONWEALTH MARKETING GROUP, INC., Great Escape Vacations & Tours, Inc., Frederick F. Ziegler, III, and Robert E. Kane, Defendant–Counterclaim Plaintiffs,**

v.

Federal Trade Commission, United States of America, Jodie Berstein, Brenda W. Doubrava, Larissa L. Bungo, Michael Milgrom, John Does 1–20, Jane Does 1–20, as persons who are presently unknown, and, as federal officers, participated in the violations alleged in the Counterclaim, Counterclaim Defendants.

No. Civ.A. 98–918.

United States District Court,
W.D. Pennsylvania.

May 7, 1999.

Albert W. Schollaert, United States Attorney's Office, Pittsburgh, PA, Brenda W. Doubrava, Larissa L. Bungo, Michael Milgrom, Federal Trade Commission, Cleveland, OH, for Plaintiff.

Ronald L. Hicks, Joseph E. Linehan, Meyer, Unkovic & Scott, Pittsburgh, PA, William F. Manifesto, Ellen M. Viakley, Manifesto & Donahoe, Cleveland, OH, J. Alan Johnson, Thomas W. Corbett, Jr., Thorp, Reed & Armstrong, Donald J. Balsey, Jr., Pittsburgh, PA, for Defendants.

### MEMORANDUM

STANDISH, District Judge.

### I

In this civil action, plaintiff, the Federal Trade Commission, alleges that defendants, Commonwealth Marketing Group, Inc., Great Escape Vacations & Tours, Inc., Frederick F. Zeigler, III and Robert E. Kane, violated the Federal Trade Commission Act (the FTC Act), 15 U.S.C. § 41 *et seq.*, and the Telemarketing Sales Rule, 16 C.F.R. Part 310, in connection with the telemarketing of vacations. Defendants filed a counterclaim against counterclaim defendants, the Federal Trade Commission, the United States of America, Jodie Berstein,[1] Brenda W. Doubrava, Larissa L. Bungo, Michael Milgrom, John Does 1 through 20 and Jane Does 1 through 20, seeking compensatory damages and declaratory and injunctive relief premised upon alleged violations of defendants' Fourth and Fifth Amendment rights as defined in the United States Constitution and their property and due process rights as defined in Article I, Section 1 of the Pennsylvania Constitution and upon alleged tortious conduct in the nature of abuse of process, malicious prosecution and conversion.[2] Presently, before the court is the motion of counterclaim defen-

dants to dismiss defendants' counterclaim and plaintiff's motion to strike jury demand and certain defenses contained in defendants' amended answer. After consideration, and for the reasons set forth below, the court will grant the motion to dismiss in part. The court will also grant the motion to strike defendants' demand for a jury trial insofar as defendants have demanded a jury trial of the claims set forth in plaintiff's complaint and will grant the motion to strike certain defenses in part.

### II

In summary, defendants' counterclaim alleges the following facts:

The Federal Trade Commission (FTC) is a statutorily-created agency of the United States of America (United States) whose authority is defined in the FTC Act. Jodie Bernstein is the director of the FTC's Bureau of Consumer Protection. Brenda W. Doubrava, Larissa L. Bungo and Michael Milgrom are employees of the FTC and the FTC's attorneys of record in this case.[3] John Does 1 through 20 and Jane Does 1 through 20 are employees or agents of the FTC or some other agency or branch of the United States.

On May 26, 1998, at the direction of Bernstein, the FTC, through its attorneys, filed the complaint in the present case. Also on May 26, 1998, the FTC filed an *ex parte* motion for a temporary restraining order (TRO), requesting an asset freeze, appointment of receiver, expedited discovery and an order to show cause why a preliminary injunction should not issue.[4]

---

1. The correct spelling of this counterclaim defendant's last name is "Bernstein."

2. Defendants assert that their claims are properly bought under the Administrative Procedures Act (the APA), 5 U.S.C. §§ 701–706, the Federal Tort Claims Act (the FTCA), 28 U.S.C. §§ 1346(b), 2671–2680, and *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).

3. The court will refer to Bernstein, Doubrava, Bungo and Milgrom collectively as "the individual counterclaim defendants."

4. Both the complaint and motion were filed under seal. Defendants allege that when the FTC filed its motion, the counterclaim defendants knew of the identity of defendants and their counsel. They also allege that they knew that the United States was already in possession of a significant portion of defendants' business records and other materials.

The motion stated that the FTC's *ex parte* request was made pursuant to Section 13(b) of the FTC Act, 15 U.S.C. § 53(b). FTC's brief in support of its motion stated that the TRO was "essential to maintain the status quo." In support of the motion, Doubrava submitted an affidavit that affirmed that she, along with Bungo and Milgrom, had reviewed and copied a substantial portion of defendants' documents and records that federal authorities were holding in the United States Courthouse in Pittsburgh, Pennsylvania. In a second affidavit, Doubrava affirmed that the FTC had not given defendants notice of the filing of either the complaint or the motion because, in the FTC's experience, the FTC's position is more strategically sound when notice is not given to telemarketing companies and other businesses who are accused of committing consumer fraud. None of the materials submitted to the court alleged that defendants had concealed or destroyed documents or assets when faced with civil or criminal proceedings. Similarly, the materials did not indicate that the counterclaim defendants' true intention was to shut down defendants' business operations and not to maintain the status quo.

On May 26, 1998, the court granted FTC's *ex parte* motion. Before serving the TRO on defendants on May 27, 1998, counterclaim defendants met with Carl P. Izzo, Jr., the court-appointed receiver, and certain unknown agents from the Pennsylvania Attorney General's Office and the FTC's Bureau of Consumer Protection. The purpose of the meeting was to discuss the course of conduct through which the counterclaim defendants would use the TRO to shut down defendants' business operations and seize their assets, accounts, money, contracts and other property.

On May 27, 1998, counterclaim defendants arrived on defendants' business premises and, with the assistance of the United States Marshal's Office and receiver Izzo, shut down defendants' business operations, interrogated and sent home de-fendants' employees, changed the locks on the premises and seized defendants' customer lists, account ledgers, books, correspondence, manuals, contracts, records, electronic data, materials and other property.

Starting on May 27, 1998, counterclaim defendants took control of defendants' assets, properties, contracts, monies and accounts, including accounts and monies held jointly between the individual defendants and their spouses as tenants by the entireties as well as accounts and monies held by non-party companies and individuals. Also, by way of press releases, telephone calls and notices posted on the FTC's Internet web site, counterclaim defendants issued defamatory statements pertaining to defendants' businesses for the purpose of shutting down defendants' business operations.

On June 4, 1998, the court dissolved the TRO.

## III

### A

A motion to dismiss for lack of subject matter jurisdiction tests the power of a court to hear the particular type of claim asserted by a plaintiff. On a counterclaim defendant's Fed.R.Civ.P. 12(b)(1) motion to dismiss, the counterclaim plaintiff has the burden of showing jurisdiction exists. *See Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3rd cir.1991). In deciding a motion to dismiss for lack of subject matter jurisdiction, the court may consider the pleadings and evidence outside the pleadings. *Mortensen v. First Federal Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3rd Cir.1977). Also, the court may "weigh the evidence and satisfy itself as to its power to hear the case." *Mortensen*, 549 F.2d at 891.

### B

A motion to dismiss for failure to state a claim tests the sufficiency of a counterclaim. *See Kost v. Kozakiewicz*, 1 F.3d

176, 183 (3d Cir.1993). In deciding a motion to dismiss under Fed.R.Civ.P. 12(b)(6), the court accepts as true the facts pleaded in the complaint, or counter-claim, and any reasonable inferences derived from those facts. *Unger v. Nat'l Residents Matching Program,* 928 F.2d 1392, 1400 (3d Cir.1991). Additionally, the court is to construe the counterclaim in the light most favorable to the counterclaim plaintiff. *Colburn v. Upper Darby Twp.,* 838 F.2d 663, 665 (3d Cir.1988), *cert. denied,* 489 U.S. 1065, 109 S.Ct. 1338, 103 L.Ed.2d 808 (1989). However, the court is not required to accept as true legal conclusions or unwarranted factual inferences. *Resolution Trust Corp. v. Farmer,* 823 F.Supp. 302, 305 (E.D.Pa.1993) (citation omitted). Keeping these standards in mind, the court turns to the arguments raised in counterclaim defendants' motion to dismiss.

## IV

### A

■ Whether the FTC lacks authority to seek an *ex parte* TRO under Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), is the primary issue underlying the claims asserted in the counter-claim, and, consequently, the court begins its analysis with consideration thereof.

Section 13(b) of the FTC Act reads in pertinent part:

(b) Temporary restraining orders; preliminary injunctions

Whenever the Commission has reason to believe–

(1) that any person, partnership, or corporation is violating, or is about to violate, any provision of law enforced by the Federal Trade Commission, and

(2) that the enjoining thereof pending the issuance of a complaint by the Commission and until such complaint is dismissed by the Commission or set aside

by the court on review, or until the order of the Commission made thereon has become final, would be in the interest of the public–

the Commission by any of its attorneys designated by it for such purpose may bring suit in a district court of the United States to enjoin any such act or practice. Upon a proper showing that, weighing the equities and considering the Commission's likelihood of ultimate success, such action would be in the public interest, and after notice to the defendant, a temporary restraining order or a preliminary injunction may be granted without bond: Provided, however, That if a complaint is not filed within such period (not exceeding 20 days) as may be specified by the court after issuance of the temporary restraining order or preliminary injunction, the order or injunction shall be dissolved by the court and be of no further force and effect: *Provided further, That in proper cases the Commission may seek, and after proper proof, the court may issue, a permanent injunction.*[5]

15 U.S.C. § 53(b) (emphasis added). The first proviso authorizes the FTC to seek, and district courts to grant, preliminary relief in aid of administrative proceedings. *See F.T.C. v. World Travel Vacation Brokers, Inc.,* 861 F.2d 1020, 1024, 1028 (7th Cir.1988); *F.T.C. v. Southwest Sunsites, Inc.* 665 F.2d 711 (5th Cir.1982). *See also F.T.C. v. U.S. Oil & Gas Corp.,* 748 F.2d 1431, 1434 n. 2 (11th Cir.1984) (citing *Southwest Sunsites* for the proposition that the first proviso of Section 13(b) authorizes preliminary injunctions pending issuance of administrative complaints). The second proviso authorizes the FTC to seek, and district courts to grant, permanent injunctions without the FTC's initiating the administrative proceedings prerequisite to a grant of relief under the first proviso. *F.T.C. v. H.N. Singer, Inc.,* 668

5. The court will refer to the emphasized portion of Section 13(b) as "the second proviso" and the remainder as "the first proviso."

F.2d 1107, 1110 (9th Cir.1982). *See U.S. Oil & Gas,* 748 F.2d at 1434–35 (rejecting defendants' argument that administrative proceedings were a prerequisite to the FTC's invocation of the second proviso). Several courts have interpreted the second proviso as also authorizing district courts to employ their inherent equitable powers to grant the preliminary relief necessary to make permanent relief possible. *See, e.g., F.T.C. v. Gem Merchandising Corp.,* 87 F.3d 466, 468–69 (11th Cir.1996); *World Travel Vacation Brokers, Inc.,* 861 F.2d at 1026; *U.S. Oil & Gas,* 748 F.2d at 1434; *H.N. Singer, Inc.,* 668 F.2d at 1111.

A reading of its complaint makes it clear that the FTC brought the present action pursuant to the second proviso of Section 13(b) of the FTC Act. Therefore, the FTC was authorized to request that the court exercise its inherent equitable powers, and the court was authorized to do so. The court has not found, and the parties do not cite, any authority discussing the propriety of *ex parte* TRO's under the second proviso. However, it is beyond cavil that the court may grant an *ex parte* TRO pursuant to its inherent equitable powers. *See* Fed. R.Civ.P. 65. Accordingly, the court concludes that the FTC was acting pursuant to statutory authority when it sought and obtained the May 26, 1998 *ex parte* TRO.

### B

Defendants assert that the individual counterclaim defendants are amenable to suit under *Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), and those counterclaim defendants assert that they are immune from suit under *Bivens* on the basis of either absolute or qualified immunity.[6] Therefore, the court next considers the immunity of public officials in *Bivens* actions.

■ In actions brought pursuant to the dictates of *Bivens,* the United States Supreme Court has recognized two types of immunity for public officials. *Schrob v. Catterson,* 948 F.2d 1402, 1408–09 (3d Cir. 1991). Qualified immunity, the more prevalent type, insulates public officials from "liability for the performance of their discretionary functions when 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Buckley v. Fitzsimmons,* 509 U.S. 259, 268, 113 S.Ct. 2606, 2613, 125 L.Ed.2d 209 (1993) (citation omitted). Most public officials are entitled only to qualified immunity, and qualified immunity is, "[i]n most cases, ... sufficient to 'protect officials who are required to exercise their discretion and the related public interest in encouraging the vigorous exercise of official authority.'" *Buckley,* 509 U.S. at 268, 113 S.Ct. 2606 (citations omitted). Additionally, "the Supreme Court has been 'quite sparing' in its recognition of absolute immunity." *Schrob,* 948 F.2d at 1409.

■ However, some public officials perform "special functions" that "deserve absolute protection from damages liability." *Buckley,* 509 U.S. at 269, 113 S.Ct. 2606 (citation omitted). In determining whether a public official "deserves absolute protection," courts apply a "functional approach." *Id.* Under the functional approach, "[the courts] examine the nature of the functions with which a particular official or class of officials has been lawfully entrusted, and [they] seek to evaluate the effect that exposure to particular forms of liability would likely have on the appropriate exercise of those functions." *Schrob,* 948 F.2d at 1409 (citing *Forrester v. White,* 484 U.S. 219, 224, 108 S.Ct. 538, 542, 98 L.Ed.2d 555 (1988)). The courts focus on the nature of the

---

**6.** The individual counterclaim defendants also assert that the counterclaims asserted against them should be dismissed due to insufficiency of service of process, pursuant to Fed.R.Civ.P. 12(b)(5). However, defendants eliminated any potential insufficiency of service when they filed an amended proof of service on January 20, 1999 indicating that they had conformed with the requirements of Fed. R.Civ.P. 4(e).

function performed and not the title or status of the public official involved. *Buckley,* 509 U.S. at 269, 113 S.Ct. 2606.

■ Performance of functions that may be properly characterized as "quasi-judicial" typically entitles a public official to absolute immunity, whereas performance of investigative or administrative functions does not. *See id.* at 273, 113 S.Ct. 2606. Accordingly, the Supreme Court has extended absolute immunity to prosecutors initiating a criminal prosecution and presenting the government's case at trial, *Imbler v. Pachtman,* 424 U.S. 409, 422–25, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976), and to government attorneys participating in proceedings before administrative tribunals, *Butz v. Economou,* 438 U.S. 478, 512–14, 98 S.Ct. 2894, 2913–15, 57 L.Ed.2d 895 (1978).

■ In the present case, the individual counterclaim defendants argue that they are insulated from liability for damages [7] on defendants' *Bivens* claims because of absolute immunity or, in the alternative, qualified immunity. All of defendants' claims are premised upon the allegations of wrongful conduct on the part of counterclaim defendants in "seeking, obtaining, executing and publicizing the *ex parte* temporary restraining order...." In support of their position that the individual counterclaim defendants are not entitled to absolute immunity because they exceeded their authority and acted unlawfully in "seeking and obtaining" the TRO, defendants cite several cases, all of which are inapposite and none of which renders their position tenable. *See Buckley,* 509 U.S. at 261–64, 272–76, 113 S.Ct. 2606 (absolute immunity not available for a prosecutor who fabricated evidence while investigating a crime for which no one had been arrested or indicted and criminal proceedings were initiated several months later); *Whisman v. Rinehart,* 119 F.3d 1303, 1308–09 (8th Cir.1997) (absolute immunity

not available for juvenile officers who failed to investigate allegations of neglect before they took a sixteen-month-old child into custody for seventeen days and delayed filing state court proceedings against the child's mother); *Doe v. Phillips,* 81 F.3d 1204, 1210–11 (2d Cir.1996) (absolute immunity not available for a prosecutor who demanded that an indicted individual swear her innocence on a Bible in a church proceeding because such a demand "manifestly beyond his authority" as outlined in the First Amendment as incorporated through the Fourteenth Amendment); *Kohl v. Casson,* 5 F.3d 1141, 1146 (8th Cir.1993) (stating that "where the prosecutor switches functions from presenting the testimony of others to vouching, of his own accord, for the truth of the affidavits presented to the judicial officer, the prosecutor loses the protection of absolute immunity...."); *Cohen v. Oasin,* 863 F.Supp. 225, 230 (distinguishing *Kohl* on the ground that the prosecutor in *Cohen* did not vouch for the veracity of an affidavit but merely argued for a favorable interpretation of the evidence before the court).

Four of defendants' cases are readily distinguishable from the present case, *Buckley* because in the present case the individual counterclaim defendants were not acting as investigators when they sought and obtained the TRO in a case that had already been commenced by filing a complaint; *Whisman* because the individual counterclaim defendants had already initiated the present case, *see Whisman,* 119 F.3d at 1308 ("the gravamen ... of Whismans' complaint is not based upon the institution of state court proceedings...."); *Doe* because the individual counterclaim defendants did not exceed their authority under the Act; and *Kohl* because defendants do not allege that counterclaim defendants presented misstatements of fact to the court through affidavits of which they vouched for the

---

7. With respect to the availability of injunctive relief against Bernstein, Doubrava, Bungo and Milgrom under *Bivens,* the court defers consideration of this issue until the time of trial.

truthfulness. The last case cited by defendants, *Cohen,* is of no help to defendants because they cite it for the same proposition for which they cited *Kohl.* Additionally, the *Cohen* court held that absolute immunity did insulate the prosecutor in that case from liability.

█ The parties also argue over the applicability of *Schrob* to the present case. In *Schrob,* a case involving an *in rem* civil forfeiture proceeding brought under the Comprehensive Drug Abuse Prevention and Control Act, the United States Court of Appeals for the Third Circuit applied the functional approach and held that absolute immunity insulated the government's attorney from liability for certain actions that he had taken. One such action was the attorney's telling a "bald faced lie" to a district judge during his application for a seizure warrant. *Schrob,* 948 F.2d at 1417. After determining that "a prosecutor seeking a seizure warrant is performing 'the preparation necessary to present a case,'" the Third Circuit concluded that absolute immunity insulated the prosecutor from liability because the act of appearing before and presenting evidence to a judge was clearly performed by the prosecutor as an advocate and not as an administrator or investigator. *Id.*

Other actions taken by the attorney were the improper retention and mismanagement of seized property and the issuance of false statements to the press and public about the seizure. *Id.* at 1417–21. The Third Circuit determined that these actions were properly characterized as "administrative" in nature and concluded that the attorney was not entitled to absolute immunity with respect to those actions. *Id.*

█ The present case being analogous to *Schrob,*[8] the court concludes that the individual counterclaim defendants[9] are entitled to absolute immunity with respect to their roles in seeking the TRO, including the misstatement of facts to the court. Furthermore, it is apparent from the court's discussion in Part IV.A, *supra,* that the claims based upon the individual counterclaim defendants allegedly exceeding their statutory authority in obtaining the TRO are without merit. Because they did not present any argument regarding the application of absolute immunity to their conduct so far as it relates to publicizing the TRO, and because *Schrob* appears to be controlling on that issue, the court concludes that the individual counterclaim de-

---

8. Defendants cite *Canell v. Oregon Dept. of Justice* for the following:

   Government attorneys are not automatically entitled to absolute immunity for initiating civil proceedings without regard to the nature of the case or the role the attorney plays in that proceeding. They are protected by absolute immunity only when performing "quasi-prosecutorial" functions in civil cases. In those cases where a government attorney has been found entitled to absolute immunity for initiating a civil action, the underlying civil proceeding has invariably been analogous to a criminal prosecution.

   811 F.Supp. 546, 551–52 (D.Or.1993). Defendants also state that *Schrob* involved a civil action analogous to a criminal prosecution. However, defendants do not raise the argument that the present action is not analogous to a criminal proceeding. Therefore, the court does not read defendants' brief as attempting to distinguish *Schrob* on this ground.

9. The individual counterclaim defendants also argue that *Bivens* does not admit of liability on a *respondeat superior* theory and that, as a result, the *Bivens* claims asserted against Bernstein should be dismissed. Defendants state that Bernstein's liability is not premised upon such a theory, and the court agrees.

   However, although defendants indicate that Bernstein is not an attorney of record in the present case, they fail to indicate how this would preclude an application of absolute immunity to the actions of Bernstein. They admit that Bernstein's liability is premised upon the direct participation of Bernstein in the alleged misconduct of Doubrava, Bungo and Milgrom. As this misconduct relates to the prosecutorial and administrative conduct of government attorneys involved in a civil action, the court ascertains, and defendants have given the court, no reason not to apply the doctrine of absolute immunity to Bernstein.

fendants are not entitled to absolute immunity for such conduct.

■ As for defendants' allegations relating to executing the TRO, contrary to the individual counterclaim defendants' assertions, defendants do allege, both explicitly and implicitly, that the individual counterclaim defendants acted outside the scope of the TRO while executing the TRO. *See* D.Br. at 22; Counterclaim ¶ 21. However, arguably, the only action alleged that could be outside the scope of the TRO relates to "accounts and monies held jointly between the individual [defendants] and their spouses as tenants by the entireties and accounts and monies held by companies and/or individuals other than the [defendants]." [10] Counterclaim ¶ 21. The remaining allegations in defendants' counterclaim are well within the scope of the TRO, and, as a result, the individual counterclaim defendants are not liable for any damages arising from the conduct contained in these allegations. *See Coverdell v. Dept. of Social & Health Servs.*, 834 F.2d 758, 764 (9th Cir.1987) (noting that "other circuits . . . have held that persons who faithfully execute valid court orders are absolutely immune from liability for damages in civil rights actions challenging conduct authorized by the order" and holding that a child protective services worker executing a court order was entitled to absolute immunity).

■ The court next considers whether qualified immunity insulated the individual counterclaim defendants from liability for damages stemming from their roles in publicizing the TRO and seizing property beyond the scope of the TRO. As the court has already noted, qualified immunity insulates public officials from "liability for the performance of their discretionary functions when 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Buckley v. Fitzsim-*

*mons,* 509 U.S. at 268, 113 S.Ct. 2606. "Whether an official may prevail in his qualified immunity defense depends upon the 'objective reasonableness of [his] conduct as measured by reference to clearly established law.' . . . No other 'circumstances' are relevant to the issue of qualified immunity." *Davis v. Scherer,* 468 U.S. 183, 191, 104 S.Ct. 3012, 3017, 82 L.Ed.2d 139 (1984) (citation omitted). "The ultimate issue is whether, despite the absence of a case applying established principles to the same facts, reasonable officials in the defendants' position at the relevant time could have believed, in light of what was in the decided case law, that their conduct would be lawful." *Good v. Dauphin County Soc. Servs.,* 891 F.2d 1087, 1092 (3d Cir.1989). "[E]ven where the officials clearly should have been aware of the governing legal principles, they are nevertheless entitled to immunity if based on the information available to them they could have believed their conduct would be consistent with those principles." *Good,* 891 F.2d at 1092.

The individual counterclaim defendants argue that they are entitled to qualified immunity because defendants do not articulate the clearly established statutory and constitutional rights that they allegedly violated. Defendants do not address this argument with respect to publicizing the TRO, and, accordingly the court concludes that actions pertaining to publicizing the TRO are covered by the individual counterclaim defendants' qualified immunity.

■ With respect to seizing property beyond the scope of the TRO, defendants refer to the Fourth and Fifth Amendments. Based on the allegations contained in defendants' counterclaim and the arguments of counsel, the court concludes that the motion of the counterclaim defendants should not be granted insofar as defendants' *Bivens* claims are based upon the

---

**10.** It is not clear that the defendants would have standing to assert claims based upon the counterclaim defendants exceeding the scope

of the TRO by seizing the property of persons or entities not before the court.

individual counterclaim defendants exceeding the scope of the TRO. Thus, having concluded that Bernstein, Doubrava, Bungo and Milgrom are immune from liability for damages arising out of their seeking, obtaining and publicizing the TRO, as well as executing the TRO, except as specified above in the court's discussion of absolute immunity, the court proceeds to consider the remaining arguments of counterclaim defendants in support of their motion to dismiss.

## C

■ Defendants assert the FTCA as a basis for the court's jurisdiction over all counterclaim defendants. The FTC argues that it cannot be sued by defendants pursuant to the FTCA, and defendants do not respond to this argument. Thus, the court concludes that the argument has merit and that the FTC is not amenable to suit under the FTCA.

■ The individual counterclaim defendants assert that, to the extent that defendants' counterclaim contains tort-based claims against them, and it clearly does, the United States will certify that they were acting within the scope of their employment when they engaged in the conduct alleged. They state that this certification would then trigger Section 2679(d)(1) of the FTCA [11] and result in a substitution of the United States for them. Defendants assert that consideration of the effect of such a certification is premature because no certification has been filed, and the court agrees.

■ Next, the court considers the argument of the United States that defendants' failure to comply with the FTCA's administrative claim requirement, as set forth in 28 U.S.C. § 2675, precludes the

court's exercising jurisdiction over the United States, Section 2675(a) reads as follows:

> An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail.

> \* \* \* \* \* \*

> The provisions of this subsection shall not apply to such claims as may be asserted under the Federal Rules of Civil Procedure by third party complaint, cross-claim, or counterclaim.

28 U.S.C. § 2675(a). The parties do not dispute that defendants have not filed an administrative claim with the FTC. They do, however, dispute the applicability of the counterclaim exception contained in the concluding proviso of Section 2675(a).

The first issue disputed is whether the counterclaim exception applies to compulsory counterclaims only. The court agrees with the United States that it does. *See Spawr v. United States,* 796 F.2d 279, 281 (9th Cir.1986); *Northridge Bank v. Community Eye Care Ctr., Inc.,* 655 F.2d 832, 835–36 (7th Cir.1981). Having decided that the counterclaim exception applies to compulsory counterclaims only, the court considers the issue of whether defendants' counterclaims are compulsory.

■ In the Third Circuit, "... the operative question in determining if a claim

---

11. Section 2679(d)(1) reads as follows:
    Upon certification by the Attorney General that the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose, any civil action or proceeding commenced upon such claim in a United States district court shall be deemed an action against the United States under the provisions of this title and all references thereto, and the United States shall be substituted as the party defendant.
    28  U.S.C. § 2679(d)(1).

is a compulsory counterclaim is whether it bears a logical relationship to an opposing party's claim." *Xerox Corp. v. SCM Corp.*, 576 F.2d 1057, 1059 (3d Cir.1978).

A counterclaim is logically related to the opposing party's claim where separate trials on each of their respective claims would involve a substantial duplication of effort and time by the parties and the courts. Where multiple claims involve many of the same factual issues, or the same factual and legal issues, or where they are offshoots of the same basic controversy between the parties, fairness and considerations of convenience and of economy require that the counterclaimant be permitted to maintain his cause of action. Indeed the doctrine of res judicata compels the counterclaimant to assert his claim in the same suit for it would be barred if asserted separately, subsequently. Thus, a detailed analysis must be made to determine whether the claims involve: (1) many of the same factual issues; (2) the same factual and legal issues; or (3) offshoots of the same basic controversy between the parties.

*Xerox Corp.*, 576 F.2d at 1059. Also, "in this Circuit the necessity to analyze the facts and issues involved in the counterclaim militate against the use of any general rule." *Id.* at 1060.

■ In the present case, defendants' counterclaims do not bear a logical relationship to plaintiff's claims. The bases for plaintiff's claims are defendants' alleged violations of the FTC Act and Telemarketing Rule through their telemarketing practices. Defendants' counterclaims are based upon alleged improprieties relating to the *ex parte* TRO. The factual underpinnings of and the legal issues relevant to the parties' claims simply are not the same. The court also concludes that the counterclaims and plaintiff's claims are not offshoots of the same basic controversy.

Additionally, the court does not see, and defendants do not explain, how considerations of fairness and judicial economy dictate a different result. Also, defendants' argument that their counterclaims are compulsory because they fall within a general category of claims is without merit in light of the *Xerox* court's admonition that a determination of the nature of a counterclaim requires a court to engage in a fact-based analysis. Accordingly, the court concludes that defendants' counterclaims are not compulsory. Having so concluded and noting that the counterclaim exception in the concluding proviso of Section 2675(a) is therefore inapplicable, the court also concludes that defendants' failure to comply with the FTCA's administrative claim requirement bars the court's exercising jurisdiction over the United States.[12] As a result of the foregoing, the motion of the FTC and United States, but not that of the individual counterclaim defendants, will be granted with respect to defendants' claims brought under the FTCA.

**D**

■ Finally, defendants assert the APA as the final basis for the court's jurisdiction over the claims asserted against counterclaim defendants. The individual counterclaim defendants argue that the APA does not confer jurisdiction over them, and defendants do not attempt to refute their argument. Accordingly, the court concludes that the argument has merit.

Pursuant to Section 702 of the APA, a person seeking relief, other than money damages, from a "legal wrong because of agency action ... is entitled to judicial review thereof." 5 U.S.C. § 702. In Section 704, the APA further defines the agency actions reviewable by the courts:

Agency action made reviewable by statute and final agency action for which

---

**12.** In light of this conclusion, the court declines to consider the United States' other

arguments in support of its motion.

there is no other adequate remedy in a court are subject to judicial review. A preliminary, procedural, or intermediate agency action or ruling not directly reviewable is subject to review on the review of the final agency action. Except as otherwise expressly required by statute, agency action otherwise final is final for the purposes of this section whether or not there has been presented or determined an application for a declaratory order, for any form of reconsideration, or, unless the agency otherwise requires by rule and provides that the action meanwhile is inoperative, for an appeal to superior agency authority. 5 U.S.C. § 704. The FTC and the United States argue that because the actions complained of by defendants were not the result of a final agency action and, if they were, an adequate remedy in court was available to defendants, the statutory prerequisites to the court's reviewing the actions of the FTC and United States are not met.

Initially, defendants argue that in cases involving agency action resulting in irreparable harm or a clear and unambiguous statutory or constitutional violation, final agency action is not a statutory prerequisite to the court's review. In support of their position, the defendants cite *First Jersey Securities, Inc. v. Bergen*, 605 F.2d 690, 696 (3d Cir.1979) (stating that "we have recognized two situations in which the exhaustion requirement will not be adhered to: 1) when the administrative procedure is clearly shown to be inadequate to prevent irreparable injury; or 2) when there is a clear and unambiguous statutory or constitutional violation.") However, this case is of no avail because the Third Circuit was clearly addressing

exceptions to the requirement of exhaustion of administrative remedies before the filing of a law suit and not the finality of an agency's action.[13] Also, defendants' reliance on *Patlex Corp. v. Mossinghoff*, 585 F.Supp. 713, 720 & n. 10 (E.D.Pa.1983) is misplaced because *Patlex* involved a facial challenge to a regulatory scheme. Thus, defendants' position is untenable.

"In determining whether there is a final agency action, the Supreme Court has stated that the 'core question is whether the agency has completed its decision making process, and whether the result of that process is one that will directly affect the parties.'" *Aerosource, Inc. v. Slater*, 142 F.3d 572, 578 (3d Cir.1998) (citation omitted). "The action must be a 'definitive statement[ ]; of [the agency's] position' with concrete legal consequences." *Aerosource, Inc.*, 142 F.3d at 578 (citation omitted). "To be a final, reviewable action, ... the agency action must be one that 'impose[s] an obligation, den[ies] a right, or fix[es] some legal relationship as a consummation of the administrative process.'" *Hindes v. F.D.I.C*, 137 F.3d 148, 162 (3d Cir.1998).

The FTC's actions are conveniently separated into four categories: (1) seeking; (2) obtaining; (3) executing; and (4) publicizing the TRO. As for the "seeking" and "obtaining" categories, defendants challenge the authority of the FTC to seek and obtain the TRO. (D.Br. at 37, 38 n. 14). The court has already concluded that the FTC had such authority pursuant to Section 13(b) of the FTC Act. Consequently, the court will not consider whether the "seeking" and "obtaining" categories include actions that are properly categorized as "final" FTC decisions.[14]

---

13. Given the context of the Third Circuit's statement in *First Jersey Securities*, the court declines to follow *Hunter v. SEC*, No.Civ.A. 94–5340, 1994 WL 580096 (E.D.Pa. Oct. 20, 1994), a case in which the district court merely cited *First Jersey Securities, Inc.* without analysis.

14. Defendants argue that an agency's filing of an administrative complaint in an administrative proceeding does constitute final agency action. *See Ticor Title Ins. Co. v. F.T.C.*, 814 F.2d 731, 744–45 (D.C.Cir.1987); *Athlone Indus. v. Consumer Prod. Safety Comm'n*, 707 F.2d 1485, 1487 n. 30 (D.C.Cir.1983). Assuming, without deciding, that the cases cited

With respect to executing the TRO, the FTC and the United States argue that the court-appointed receiver, an individual who was not the agent of FTC or United States, executed the TRO and that his actions do not constitute final FTC activity because he was an independent decision-maker not subject to the APA. Defendants do not respond to this argument; therefore, the court concludes that it has merit.

Regarding publicizing the TRO, the FTC and the United States argue that "the mere publication of material, even if harmful to a claimant, [is] not final agency action." (Br. at 31) (citing *Aerosource, Inc. v. Slater,* 142 F.3d 572 (3d Cir.1998)). Again, defendants do not present a counter argument. Accordingly, the court concludes that the argument has merit.[15] Based upon the foregoing, the court will grant the motion of counterclaim defendants to dismiss defendants' claim brought pursuant to the APA.

## V

The court next considers the motion of plaintiff, pursuant to Fed.R.Civ.P. 39(a)(2), to strike defendants' jury demand. The parties do not dispute that defendants are not entitled to a jury trial on the FTC's allegations under Section 13(b) of the FTC Act, nor do they dispute that the defendants are entitled to a jury on the defendants' allegations contained in their counterclaim. The parties do, however, dispute the availability of a jury trial on the FTC's allegations under Section 19(b) of the FTC Act.

Because Section 19 does not provide for a jury trial, defendants rely upon the Seventh Amendment as the basis for their demand for a jury trial. The Seventh Amendment provides that "[i]n Suits

at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved...." U.S. Const. amend. VII. The phrase "Suits at common law" refers to "suits in which legal rights were to be ascertained and determined, in contradistinction to those where equitable rights alone were recognized, and equitable remedies were administered." *Granfinanciera, S.A. v. Nordberg,* 492 U.S. 33, 41, 109 S.Ct. 2782, 2789, 106 L.Ed.2d 26 (1989) (citation omitted). Therefore, "those actions that are analogous to 18th-century cases tried in courts of equity or admiralty do not require a jury trial." *Tull v. United States,* 481 U.S. 412, 417, 107 S.Ct. 1831, 1835, 95 L.Ed.2d 365 (1987) (citation omitted).

To determine whether a case involves legal or equitable rights, the courts engage in a two-step inquiry in which they examine the nature of the issues involved and the remedy sought. "First, [the courts] compare the statutory action to 18th-century actions brought in the courts of England prior to the merger of the courts of law and equity. Second, [the courts] examine the remedy sought and determine whether it is legal or equitable in nature." *Chauffeurs, Teamsters & Helpers, Local No. 391 v. Terry,* 494 U.S. 558, 565, 110 S.Ct. 1339, 1345, 108 L.Ed.2d 519 (1990). "The second inquiry is the more important in [the] analysis." *Chauffeurs, Teamsters & Helpers,* 494 U.S. at 565, 110 S.Ct. 1339.

The only court to consider the issue now before the court is the United States District Court for the Southern District of New York. In *F.T.C. v. AMREP Corp.,* 705 F.Supp. 119 (S.D.N.Y.1988), the FTC brought an action under Section 19 of

by defendants are correct statements of the law and are applicable to the present case, the court notes that, at most, the cases would apply to the actions of the FTC and the United States in seeking and obtaining the TRO. However, this does not help defendants' cause because, as the court has already observed, counterclaim defendants acted pursuant to

their statutory authority in seeking and obtaining the *ex parte* TRO.

15. In light of these conclusions, the court declines to consider the FTC's and United States' other arguments in support of their motion.

the FTC Act after·adjudication of its Section 5 claim by an administrative law judge. 705 F.Supp. at 120–21. The FTC moved for summary judgment and argued that the material findings of the Section 5 administrative proceeding precluded relitigation of the relevant underlying issues in the subsequent Section 19 action. *Id.* at 125–27. In opposition, Amrep argued that the grant of the motion would deprive it of its right to a jury trial. *Id.* at 126. However, the district court rejected Amrep's argument and stated:

> Although the action under Section 19 bears similarity to an action for misrepresentation at common law, it is also different in many respects. First, it may be brought only by an agency of the United States Government and not by the individual victim of the fraud. Its definition of the elements of the cause of action also differs from common law fraud. I conclude that the cause of action created by Section 19 does not fall within the right to a trial guaranteed by the Seventh Amendment.

*Id.*

The court finds this reasoning persuasive. Moreover, defendants' attempt to distinguish *AMREP* from the present case is unavailing because the *AMREP* court's analysis was not affected in any way by the facts of that case. Also, the United States Court of Appeals for the Eleventh Circuit has referred to Section 19 as giving a court equitable jurisdiction. *See F.T.C. v. Gem Merchandising Corp.*, 87 F.3d 466, 469 (11th Cir.1996) (distinguishing Section 19 from Section 13 on the ground that Section 19 explicitly prohibits "exemplary or punitive damages" and stating that the prohibition is a "legislative command [that] expressly limits a court's equitable jurisdiction.").

Defendants argue that they are entitled to a jury trial because Section 19 actions are legal in nature as evidenced by the section's stated purpose of compensating injured consumers through the payment of damages. In support of their argument, defendants cite *F.T.C. v. Figgie Int'l, Inc.*, 994 F.2d 595, 605 (9th Cir.1993) for the statement that "there may be no redress without proof of injury caused by those practices. And the relief must be necessary to redress the injury." This statement simply lacks the force necessary to overcome the unambiguous statements found in *AMREP* and *Gem Merchandising*. Additionally, any force it might have is undermined by subsequent statements, addressing the objection of Figgie Int'l to being ordered to pay for losses beyond its gains, couched in terms of equity. *See Figgie Int'l, Inc.*, 994 F.2d at 606 ("[w]hile ordinarily the proper measure of restitution is the amount of enrichment received, if the loss suffered by the victim is greater than the unjust benefit received by the defendant, the proper measure of restitution may be to restore the status quo."); *id.* at 607 ("[a]s between the innocent purchaser and the wrongdoer who, though not a privy to the fraudulent contract, nonetheless induced the victim to make the purchase, equity requires the wrongdoer to restore the victim to the status quo.").

The court does agree with defendants' assertion that the terms in which the FTC has chosen to cast its complaint are not dispositive of the nature of the relief sought. *See First Nat'l Bank of Waukesha v. Warren*, 796 F.2d 999, 1000 (7th Cir.1986). However, misplaced is defendants' reliance on *Oxford Indus., Inc. v. Hartmarx Corp.*, No. 88 C 322, 1990 WL 65792 (N.D.Ill. May 2, 1990) in support of their argument that the relief requested by the FTC is equitable in nature only when requested ancillary to an equitable claim properly before the court.

The issue before the *Oxford Industries* court was whether a private plaintiff was entitled to a jury trial in a trademark action brought pursuant to 15 U.S.C. § 1117. *Oxford Indus., Inc.*, 1990 WL 65792 at *23–25. That court concluded that the private plaintiff was entitled to a jury trial. *Id.* 1990 WL 65792 at *25. This court concludes that *Oxford Indus-*

*tries* is readily distinguishable from the present case because this case involves a public agency seeking money for alleged victims who are not parties to the action. *See First Nat'l Bank of Waukesha,* 796 F.2d at 1000 (distinguishing that private plaintiff case from public agency cases that had been characterized as "equitable").

In light of the foregoing, the court concludes that plaintiff's action is equitable in nature. As a result, defendants are not entitled to a jury trial on plaintiff's claims brought under Section 13 and Section 19 of the FTC Act. Accordingly, the court will grant plaintiff's motion to strike defendants' demand for a jury trial.

## VI

Finally, the court will consider plaintiff's motion to strike certain defenses asserted against it in defendants' answer. In its motion, plaintiff moves to strike defendants' first, third through seventh, twelfth through twenty-first and twenty-third through twenty-sixth defenses.

Upon motion, the court may strike from any pleading any insufficient defense or immaterial matter. Fed.R.Civ.P. 12(f). "[A] court should not grant a motion to strike a defense unless the insufficiency of the defense is 'clearly apparent.'" *Cipollone v. Liggett Group, Inc.,* 789 F.2d 181, 188 (3d Cir.1986). However, "a court may grant a motion to strike a legally insufficient defense so the parties to the suit do not needlessly waste time and money in preparation of trial." *Cameron v. Graphic Management Assoc., Inc.,* 817 F.Supp. 19 (E.D.Pa.1992).

■ Motions to strike are generally viewed with disfavor and are frequently denied absent a showing of prejudice to the moving party. *Great West Life Assur. Co. v. Levithan,* 834 F.Supp. 858, 864 (E.D.Pa.1993). Consequently, "in order to succeed on a motion to strike, the moving party must show that the allegations being challenged are so unrelated to the plaintiff's claims as to be unworthy of any

consideration as a defense and that the moving party is prejudiced by the presence of the allegations in the pleading." *Great West Life Assur. Co.,* 834 F.Supp. at 864.

Defendants' sixteenth defense asserts that their offers for purchase and sales to foreign consumers are not subject to the FTC Act, the Telemarketing Act or the Telemarketing Sales Rule. Plaintiff correctly asserts that such conduct is subject to the FTC Act.

■ Defendants base their defense on Section 5 of the FTC Act, 15 U.S.C. § 45. Section 5 reads as follows:

(a) Declaration of unlawfulness; power to prohibit unfair practices; inapplicability to foreign trade

(1) Unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are hereby declared unlawful.

\*    \*    \*    \*    \*    \*

(3) This subsection shall not apply to unfair methods of competition involving commerce with foreign nations....

15 U.S.C. § 45. Although Section 5(a)(3) addresses unfair methods of competition, it is silent with respect to unfair or deceptive acts or practices, one of the two categories of actions declared unlawful by Section 5(a)(1). Because plaintiff's complaint alleges that defendants engaged in deceptive acts or practices, Section 5(a)(3) is a legally insufficient defense and will be stricken. However, defendants' remaining defenses will not be stricken.

## VII

In summary, because absolute or qualified immunity insulates Bernstein, Doubrava, Bungo and Milgrom from liability for damages allegedly caused by some of their actions, the court will dismiss defendants' *Bivens*-based counterclaim for damages to the extent that it is premised upon the individual counterclaim defendants' seeking, obtaining or publicizing the TRO. The court will also dismiss the *Bivens*-

based counterclaim based upon the individual counterclaim defendants' executing the TRO except to the extent that the relevant allegations pertain to their seizing property belonging to parties other than defendants and property held jointly by the individual defendants and their spouses as tenants by the entireties. As for defendants' counterclaim based upon the FTCA, the court will dismiss the counterclaim as to the FTC and the United States. Although the court will not dismiss the FTCA-based counterclaim as to the individual counterclaim defendants, the court will consider in due course any certification filed pursuant to 28 U.S.C. § 2679(d)(1). The court will also dismiss as to all counterclaim defendants the counterclaim based upon the APA.

The court will strike defendants' demand for a jury trial of plaintiff's claims because the Seventh Amendment does not require jury trials for actions brought pursuant to Sections 13 and 19 of the FTC Act. This will not affect defendants' right to a jury trial of their counterclaim. Finally, the court will strike the sixteenth defense asserted by defendants in their answer because the defense is legally insufficient.

Additionally, in view of the fact that plaintiff's claims and defendants' counterclaim are not related, the court will sever plaintiff's claims and defendants' counterclaim for pretrial and trial purposes, and the claims and counterclaim will be pretried and tried separately pursuant to Fed. R.Civ.P. 42(b).

An order follows.

## ORDER

AND NOW, this 7th day of May, 1999, in accordance with the foregoing memorandum, it is hereby ORDERED as follows:

1. The motion of counterclaim defendants Federal Trade Commission and United States of America to dismiss the claims asserted against them in the counterclaim of defendants, Commonwealth Marketing Group, Inc., Great Escape Vacations & Tours, Inc., Frederick F. Zeigler, III and Robert E. Kane, pursuant to Fed.R.Civ.P. 12(b)(1) and Fed.R.Civ.P. 12(b)(6), is granted.

2. The motion of counterclaim defendants Jodie Bernstein, Brenda W. Doubrava, Larissa L. Bungo and Michael Milgrom to dismiss the claims asserted against them in the counterclaim of defendants, Commonwealth Marketing Group, Inc., Great Escape Vacations & Tours, Inc., Frederick F. Zeigler, III and Robert E. Kane, pursuant to Fed.R.Civ.P. 12(b)(1) and Fed.R.Civ.P. 12(b)(6), is granted (a) with respect to the *Bivens* claims for damages based upon the Fourth Amendment and Fifth Amendments of the United States Constitution, except to the extent that defendants allege that counterclaim defendants exceeded the scope of the temporary restraining order (documents no. 10 and 11) when executing that order, and (b) with respect to the claims brought pursuant to the Administrative Procedures Act, 5 U.S.C. §§ 701–706.

3. The motion of plaintiff, the Federal Trade Commission, to strike defendants' demand for a jury trial, pursuant to Fed. R.Civ.P. 39(a), is granted with respect to defendants' demand for a jury trial of the claims asserted against them in the complaint of plaintiff.

4. The motion of plaintiff, the Federal Trade Commission, to strike certain defenses, pursuant to Fed.R.Civ.P. 12(f), is granted with respect to the sixteenth defense asserted in the amended answer of defendants.

5. The claims of plaintiff, the Federal Trade Commission, and the counterclaim of defendants, Commonwealth Marketing Group, Inc., Great Escape Vacations & Tours, Inc., Frederick F. Zeigler, III and Robert E. Kane, shall be severed for pretrial and trial purposes pursuant to Fed. R.Civ.P. 42(b). All pleadings, motions and other papers relating to the claims assert-

ed against defendants by plaintiff shall be filed at Civil Action Docket No. 98–918 with the caption: *Federal Trade Commission, Plaintiff, v. Commonwealth Marketing Group, Inc. et al., Defendants/Counterclaim plaintiffs.* All pleadings, motions and other papers relating to the counterclaims asserted against the counterclaim defendants by counterclaim plaintiffs shall hereafter by filed at Civil Action Docket No. 98–918 with the caption: *Commonwealth Marketing Group, et al., counterclaim plaintiffs, v. Jodie Bernstein, et al., counterclaim defendants.* On counterclaim documents, the word "Counterclaim" shall appear below the Civil Action Docket Number.

6. Counterclaim defendants Jodie Bernstein, Brenda W. Doubrava, Larissa L. Bungo and Michael Milgrom shall file a reply to defendants' counterclaim on or before Friday, May 28, 1999.